[No. 1754.]

CURRIER ET AL. v. CLARK.

1. BILLS AND NOTES—CONSIDERATION—PROMISE TO PAY DEBT OF ANOTHER.

Promissory notes executed to pay the debt of another not executed at the time of the creation of the debt must be based upon some new and valid consideration before they can be enforced as between the original parties thereto.

2. BILLS AND NOTES—CONSIDERATION—DISMISSAL OF ACTION.

An agreement to dismiss an action brought to remove an executor of a will and in which there is no dispute over property rights or pecuniary claims or interests, is not a sufficient consideration for a promissory note.

3. SAME.

An agreement between an executor of a will and certain of the legatees respecting payment to the executor of certain sums as compensation for services as executor and for expenses incurred for clerical work, for attorneys' fees and for commissions for the collection of rent, is not such an agreement as will furnish a good consideration for a promissory note, as the county court sitting as a court of probate, or the district court reviewing its proceedings can alone determine what expenses of an executor are payable and what compensation he is entitled to receive.

*Appeal from the District Court of Weld County.*

THE causes of action stated in the complaint are two promissory notes, both dated the 23d of November, 1896; one of them promising to pay on demand after date $100 at the

Union Bank in Greeley, and the other promising to pay $150 on or before six months after date at the same bank, with interest at ten per cent on the last note from date until paid. Both notes were signed by Mrs. Warren Currier and H. F. Currier. There was the usual allegation of nonpayment and the demand of judgment for $250 with the proper interest. The Curriers pleaded several defenses. The first was a plea of a want of consideration. The second set up that concurrently with the execution of the notes, they made three other notes for $250 each, due one, two and three years after date, which, with the notes sued on, made a total principal sum of $1,000. It was alleged that at the time the notes were made, and as a part of the transaction, the parties made an agreement. Respecting this agreement it is contended that it was contrary to public policy, illegal and void, but since we shall in no manner pass on this precise question we deem it only necessary to set up the substantial part of the agreement that the controversy may be apprehended. It recited that in consideration of the settlement of divers matters in controversy, it was agreed that Clark should tender his resignation as the executor of the will of Warren Currier on conditions expressed in the resignation, and further that his compensation should be settled on the basis of $500 salary net; disbursements for clerical help and commissions for the collecting of rent should be allowed as an expense item against the estate. Further, that on the acceptance of the resignation and as a condition thereto, an appeal then pending in the district court of Weld county, in a proceeding brought by Lydia W. Currier and the minor grandchildren of the deceased by their next friend, Abel K. Packard, should be dismissed at the cost of petitioners and appellants. It was next recited that in further consideration and as part of the compromise, it was understood that certain notes signed by the appellants were delivered simultaneously with the execution and delivery of the agreement. Following the execution of this agreement by Clark and the Curriers and entitled in the county court there was a resignation by Clark, as the execu-

tor of the will of Warren Currier, and of his coexecutor, Bruce F. Johnson. The resignation provided that it should be accepted with the acquittance of Clark and the sureties on the executor's bond. The replication took issue with the defenses, except that it admitted all that was contained in the first paragraph of the answer and cross-complaint, including the allegation that at the time the notes were made it was a part of the transaction, and the plaintiffs and defendants made the agreements which have been heretofore stated. The replication further took issue with the affirmative matter, alleging that the true consideration moving to the defendants for the execution of the notes, was the compromise and assumption by the defendants of a certain indebtedness due Clark from George W. Currier, a brother of one of the defendants, and a beneficiary under Warren Currier's will. While it is unimportant, it may be stated that the plaintiffs further set up that the agreement respecting the resignation of Clark as an executor, was in no wise connected with the consideration of the notes, which were based on a wholly other and different consideration. During the progress of the trial Mr. Clark was on the stand as a witness for himself, and gave considerable evidence respecting the transaction out of which the notes grew. Whether it was all admissible, and to what extent it was admissible, becomes a wholly immaterial inquiry, so far as concerns our decision, because in any event we have a right to take the statements of the replication and the evidence of the plaintiff in arriving at a true conclusion, whether there was any consideration for the paper which would entitle Clark to maintain his action thereon. We take this testimony as wholly true, and we have no reason to hold it otherwise, or to in any manner criticise it, but simply put it in this way as conclusive of his rights in the premises and determinative of the character of the paper. According to Mr. Clark's testimony there was some negotiation between the parties with reference to his relinquishment of the control and management of the estate as one of the executors. He insists that it was no part of the agreement

by the Curriers to give the notes that he should resign, that it rested wholly on a different basis, which seemed to be according to his contention, the settlement of their disputes and an assumption by Mrs. Currier and Henry F. of a part of the indebtedness which George Currier, the brother, owed. According to his testimony, during the progress of negotiations, he stated that all he wanted was a settlement with George, and he would not remain twenty-four hours in the management of the estate, if those affairs could be liquidated and put in collectible shape. He stated that the amount of George's indebtedness to him was several thousand dollars. Quite a large part of it would shortly become due, and he likewise had a judgment against him for $1,400 or $1,500 and held some bank stock as collateral. He insisted that in a land transaction with George there was due and likely to become due a good many thousand dollars, for which he would become responsible, and which might result in a good deal of loss. According to his statements, it was then agreed that these parties should contribute $1,000 towards relieving him somewhat from the burden of George's debts, for which he had become liable, and then it seems to have been further agreed that the attorneys' fees in the litigation should come out of the estate and not out of him, and that the estate should likewise pay the commissions for the collection of rents and for the bookkeeper who kept the accounts. All these items were to be charged up against the estate according to their agreement, and they should dismiss the suit and pay the costs. As he puts it, these thing were really the consideration of the notes, and had nothing to do with the resignation. It very clearly appears in the pleadings, and from the evidence, that the suit which was pending in the district court had been brought by Packard, the next friend of the minors and residuary legatees, the makers of the notes really appearing as nominal defendants, although in reality interested in the prosecution of the appeal. It must be noted that there is nothing in the record to show that Mrs. Currier and Henry were in any wise, or at all, liable to Clark for

George's debts, or in any way bound by any contract which he and Clark had entered into, or that there was any connection on the part of Mrs. Currier and Henry with any of these dealings or contracts between George and Clark. All these transactions were wholly independent of the promise, and were distinct transactions between those parties for which George Currier was alone responsible or could be made so.

Messrs. FELKER & DAYTON and Mr. C. D. TODD, for appellants.

Mr. JAMES C. SCOTT and Messrs. PATTON & ESTEB, for appellee.

Mr. H. N. HAYNES, *amicus curiæ.*

BISSELL, P. J.

In the view which we take of this controversy, there is no necessity, and there would be little propriety in entering on the discussion of the true construction of the agreement which the parties made on the 23d of November, 1896, or in attempting to determine whether the notes and the contract were parts and parcel of the same transaction, and therefore to be construed as one instrument, the validity of the one necessarily being perhaps determinable by a decision respecting the validity or invalidity of the other. We must concede the matter has been very ably argued by counsel for the appellants, as well as by the *amicus curiæ,* and the briefs are an exhaustive discussion of the propriety of such contracts and of the policy of the law respecting them. The controversy, however, can be decided without any disposition of this troublesome question, on what we conceive to be an exceedingly plain principle. The notes import a consideration. The defendants set up the want of it, and under most circumstances the burden would be on them to establish this fact. The matter is easily resolved both on the pleadings and the ap-

pellee's evidence. At the outset it must be stated, the Curriers were not indebted to Clark when they executed the notes. Clark had no claim against them and they owed him no money. They did not represent an indebtedness from the one to the other. Mr. Clark very frankly concedes that they were given to relieve him from the burden of some large indebtedness which George Currier owed him and which grew out of many business transactions between them. It may then be taken as true for the purposes of this decision, that these notes are simply promises to pay George Currier's debts, and that they were not given at the time the debts were incurred but long after they had accrued, and it therefore becomes a patent and pivotal inquiry whether there was any new consideration passing between the parties sufficient to make the promises obligatory and enforcible. It makes little difference in the result whether we accept the appellants' hypothesis that there was no consideration because the real agreement between the parties was one for the resignation of Clark as the executor of Warren Currier, or whether we take Clark's version, that this had nothing to do with it, but that they were given to pay, so far as might be, a portion of George Currier's indebtedness. If we accept the proposition of the appellants, manifestly, the agreement to resign would be neither a good nor a valuable consideration. If we take the theory which is easily deducible from Clark's testimony, that this was not the real consideration, but it is to be found in the agreement to pay a part of George's debts, then unless there is some other consideration of which the record does not advise us, none passed between the parties when the paper was given.

A good deal of stress has been put in the argument of the *amicus curiæ* on the proposition that a settlement of a pending litigation is always an adequate consideration for the execution of commercial paper. As a general proposition this is doubtless true. Wherever there is a suit pending between parties concerning property rights, and claims are asserted on the one hand and denied on the other, whether the defenses

rest on an absolute denial or are asserted by way of counter-
claim, the force of the principle and its applicability is un-
doubted.   A compromise of disputes or litigation is univer-
sally recognized by the authorities as a good consideration
for commercial paper, executed at the time for the purposes
of settlement.   As we view it, the present suit exhibits none
of the elements or facts requisite to the application of the
principle.   In the first place, the suit which was to be dis-
missed was in no sense a suit concerning property.   It was
simply a proceeding taken in the county court to remove the
executors of the estate on various grounds, of which we are
not advised, but in the end it was solely and only to remove
the trustees from the management of the property.   The suit
then concerned no dispute over property rights or pecuniary
claims or interests.   We are likewise unable to discover that
the remaining part of the agreement as stated in the plead-
ings and as testified to by Clark respecting the payment of
attorneys' fees, the payment of the commissions for the col-
lection of rent and the expense of the bookkeeper, can be
legitimately regarded as matters in dispute in that litigation,
the settlement of which would furnish a good consideration
for this commercial paper.   There are several answers to the
contention.   The suit was not begun by Mrs. Currier and
Henry, but they were defendants therein.   The proceeding
was instituted in the name of the minor heirs and residuary
legatees of Warren Currier, and was being prosecuted in the
name of their next friend, Mr. Packard.   The suit to be dis-
missed, then, was not a suit between the signers of the note
and the payee, but between other parties who were not privies
to this proceeding.   Further than this, we are totally unable
to see that the Curriers could make an agreement to dismiss
that proceeding which could in any wise bind these minor
heirs or their next friend, or that they were so situated that
they could compel the dismissal of that proceeding.   Beyond
this, it is likewise true, that the items suggested of commis-
sions, clerk hire, and attorneys' fees and salary, were matters
over which neither of the makers of the notes nor the payee

had the power of control or determination. They were determinable only by the county court which has original jurisdiction in all probate proceedings, or in the district court to which they may perhaps be taken for the purpose of review. The county court sitting as a court of probate, or the district court reviewing its proceedings, can alone determine whether those expenses and that compensation were or were not payable, and could alone determine the extent of the executor's compensation and the expenses which should be allowed him in the management of the estate. In these particulars, therefore, the agreement cannot be taken as part or parcel of the consideration of the paper, nor can the dismissal of the suit or the proceedings with reference to the removal of the executor, and seeking an accounting, in any wise furnish a basis for the promise to pay. These two considerations, as we look at it, entirely dispose of the contention that it was a compromise of a litigation and a settlement of a dispute. There was no suit between the parties to be settled. If it could in any wise be regarded as a suit in which the parties were interested, it concerned no property rights, and any agreement which they might make respecting compensation or the allowance of expenses was totally without and beyond their power, and rested wholly with the court.

This proposition being resolved against the appellee, and it appearing from his own testimony and on the entire record that Mrs. Currier and Henry were in no wise indebted to him, and that the notes were given in part payment of George's debts, it is indispensable that we should be able to find in the transaction somewhere an independent consideration moving between the parties. This we are wholly unable to do. Our conclusions in this respect are strongly fortified by the suggestion that nowhere in the record does it appear that George Currier received any credit or advantage or benefit at the time of the transaction or thereafter. So far as we can determine from the present record, George still remains indebted to Mr. Clark in the sum which he had theretofore owed. His indebtedness was in nowise reduced, Clark was

in no manner harmed, nor did he give up any security which he had theretofore held, or any obligation or promise to pay which was in his possession, or relinquish any property or contract rights. He, therefore, was not damnified by the acceptance of the paper, nor so far as we can see were the makers in any wise advantaged by their promise. All these things being true, we must conclude there was no consideration for these notes, and that they are not obligations in Clark's hands as against the makers. We, therefore, adjudge the defense of a want of consideration well maintained. Judgment should have gone for the Curriers on the testimony as it now stands. What may be shown on a subsequent trial we do not know. It is barely possible there may be some proof respecting a new consideration sufficient to support the notes. This being true, we can simply reverse the case and remand it for further proceedings not inconsistent with this opinion.

*Reversed.*