**FERGUSON v. AMERICAN BANK & TRUST CO. et al.   (No. 2835.)**

Court of Civil Appeals of Texas.   Amarillo.
May 25, 1927.

**1. Bills and notes ⬅➡90—Payee cannot enforce promissory note unsupported by consideration (Rev. St. 1925, art. 574).**

Under Rev. St. 1925, art. 574, a promissory note unsupported by any consideration is not enforceable by the payee.

**2. Trial ⬅➡350(4)—Failure to submit want of consideration to jury where evidence was sufficient to raise issue held reversible error (Rev. St. 1925, arts. 2189, 2190).**

In an action on a promissory note, failure to submit the defense of want of consideration for a note to the jury where the testimony, though sharply controverted, was sufficient to raise the issue, held reversible error, under Rev. St. 1925, arts. 2189, 2190, requiring the submission, when requested, of issues raised by the pleadings.

**3. Bills and notes ⬅➡511—Where defendant, in suit on notes, alleged notes were to be paid only from earnings of certain corporations, evidence of reorganization of corporations and sale of assets under liens held admissible.**

Where the defendant, in a suit on notes, urged as a defense that the notes were given with the understanding that they were to be paid out of the earnings of certain corporations, if sufficient, evidence of the reorganization and the final sale of the assets of the corporations under liens *held* admissible.

**4. Trial ⬅➡120(1)—In argument to jury, counsel should not state as evidence facts not revealed by the record.**

Counsel in argument to the jury should refrain from stating as evidence any fact not revealed by the record.

Error from District Court, Grayson County; Silas Hare, Judge.

Suit by the American Bank & Trust Company, plaintiff, against A. M. Ferguson. After the institution of the suit the bank was dissolved, and the directors were permitted to intervene. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

T. S. Henderson, of Cameron, J. F. Holt, of Sherman, and F. L. Henderson, of Bryan, for plaintiff in error.

Freeman, McReynolds & Hay, of Sherman, for defendants in error.

JACKSON, J.   This suit was instituted in the district court of Grayson county, Tex., by the American Bank & Trust Company, plaintiff, against A. M. Ferguson, defendant, on two notes dated October 5, 1921, each in the sum of $5,000 and bearing interest at the rate of 8 per cent. per annum, and containing the usual stipulation for attorney's fees. The notes were signed by the defendant, and payable to the plaintiff one and two years after date, respectively.

After the institution of the suit, the plaintiff bank was dissolved and the directors of said bank, before its dissolution, were permitted to intervene. The petition contained the necessary allegations to authorize a recovery on the notes.

The defendant answered by general demurrer and pleaded that the notes sued on were without consideration; that, if there ever was any consideration for said notes, it had failed; that said notes were signed, delivered, and accepted conditionally; that the Ferguson Seed Farm, hereinafter called the seed farm, and the Scott & McKown Gin Company, corporations in which the defendant was interested, were unable to pay to the plaintiff a large sum of money due it, evidenced by notes, acceptances, and securities, all of which were sold, transferred, and delivered by the plaintiff to Dick Chapman, and that by such sale the plaintiff sustained a loss; that after said sale the notes sued upon were given and it was agreed that, if the seed farm should thereafter be able from its earnings to pay such loss, or a part thereof, it should do so; that under the terms of the sale, by plaintiff, of the notes, acceptances, and securities, to Chapman, the seed farm was not permitted to execute notes for any additional obligations until said existing indebtedness had been paid; that, under these conditions, it was agreed that the defendant should sign the notes sued on, with the express understanding that he would not be liable thereon, and the payment thereof would not be demanded, unless it could be made from the earnings of the seed farm; that he insisted that the conditions of the agreement be placed in writing, but the plaintiff represented that it would carry out said conditions and agreement, and, relying thereon, the notes in controversy were signed by him; that the operation of the seed farm was unsuccessful, and all its properties were sold, under the mortgages and deeds of trust, and it was never able to pay said notes; that, as an inducement for him to sign the notes, the plaintiff promised, through its officers, and agreed to aid him in obtaining credit for operating the seed farm, and, but for such promise, he would not have signed the notes nor made the conditional delivery thereof to the plaintiff; that the plaintiff not only failed and refused to aid the defendant in obtaining the credit, but the cashier represented to the officers of the Merchants' & Planters' Bank of Sherman, Tex., from which defendant was endeavoring to obtain money, that the defendant was not honest, but had delivered to plaintiff warehouse receipts and obtained money thereon, when the goods cov-

ered by such receipts were not in existence, which representations were untrue, and by reason of said representations the Merchants' & Planters' Bank did not loan defendant any money, or allow him any credit, which had much to do with the failure of the seed farm.

The plaintiff in a supplemental petition replied by exceptions and general denial and pleaded that the Ferguson seed farm was indebted to it in excess of $100,000, upon which indebtedness the defendant was personally liable; that neither the defendant nor the seed farm were able to pay said indebtedness in full, and it was agreed that the plaintiff would accept $50,000 in cash in full settlement of all of said indebtedness; that, after this agreement and settlement was entered· into, the defendant informed the plaintiff that he was unable to procure the $50,000 in cash, but, if plaintiff would accept $40,000 in ·cash, and his two notes for $5,000 each, a settlement could be made; that this proposition of the defendant was finally accepted, the $40,000 paid, and the notes sued on executed, and the defendant released from all personal liability on said indebtedness except the two notes in controversy; and that such release was the consideration for the two notes of $5,-000 each.

In response to special issues submitted by the court, the jury found, in effect, that there was no agreement between plaintiff and defendant that the notes sued upon were to be paid out of the assets, if any, of the Ferguson Seed Farm, and not to be paid by the defendant; that the notes sued on were given to the plaintiff by the defendant, as his obligation without conditions.

On these findings the court rendered judgment against the defendant, hereinafter called appellant, for the sum of $14,300, with interest thereon from date, in favor of the plaintiff, hereinafter called appellee, from which judgment appellant by writ of error prosecutes this appeal.

The appellant challenges as error the action of the court in refusing to submit to the jury on his request the issue of want of consideration, because pleaded by him as a defense and raised by the testimony. The answer of appellant shows that this issue was presented as one defense to the payment of the notes and the record shows that he timely requested the court to submit such issue to the jury for its determination, and that the request was refused.

The testimony discloses that the seed farm and the Scott & McKown Gin Company, which was a subsidiary corporation to the seed farm, and for practical purposes one and the same, were indebted to the bank in a sum exceeding $100,000, evidenced by notes and acceptances and secured with most of the capital stock of said corporations and by liens against all of the properties of the two cor-porations; that appellant was the principal stockholder and general manager of said corporations and personally liable for said indebtedness; that the bank was having financial difficulties and was insisting under instructions from the banking department of the state that the indebtedness be discharged or a substantial payment made · thereon; that neither the corporations nor the appellant could discharge or reduce the indebtedness.

The appellees contend that under these circumstances, at the request of appellant, it agreed to accept $40,000 in cash and the two notes sued on, in settlement of its entire indebtedness against said corporations, and appellant, and relieve him from his personal liability. The testimony of appellees tends to support this contention.

The evidence of appellant is, in substance: That in order to secure said indebtedness to the bank, most of the capital stock of the two corporations had been placed with it as collateral, and a comprehensive deed of trust and mortgage executed to the bank, covering all of the assets of the two corporations. That shortly after the execution of the deeds of trust the bank requested that he assist in finding a purchaser, who would take the notes, acceptances, and securities held by the bank, and pay it the indebtedness. That negotiations were had with various parties, but no purchaser found. That some months after he was requested to assist in finding a purchaser, a Mr. Chapman, on his own initiative and without being solicited relative thereto, told appellant to advise the bank that he (Chapman) would pay $40,000 in cash for the bank's indebtedness against the defendant, and the two corporations, if all of the notes, acceptances, and securities were properly transferred to him, and the indebtedness of the companies to other creditors paid, or extended, and no obligations incurred until he was paid. That he told the bank: "That Mr. Chapman would give $40,000 cash for the notes, acceptances, and deeds of trust, and a complete assignment of all our accounts with the bank on condition that it should be a complete assignment and that Ferguson Seed Farm and Scott & McKown Gin Company should, by some arrangement, be able to liquidate, settle, or defer all of the claims of all other parties which they were owing, so that these assets which would be transferred to him would be available for refunding to him the money which was evidenced by those collaterals before any one else should be paid. There were a number of other special conditions that entered into it, but these were the important ones. The outside debts had to be cleared in some way, so that all of the assets of the two companies would be available to pay the sums which Mr. Chapman would receive, as a result of the papers. That deal

was carried out. You hand me for identification two documents which I identify as having been executed in making the transfer of the collaterals to Mr. Dick Chapman. These instruments show that for $40,000 the papers, notes, accounts, or evidence of indebtedness and collaterals, were transferred to Mr. Dick Chapman." That, after some consideration, the proposition of Mr. Chapman was accepted by the bank, but some considerable time was required before the conditions imposed by Mr. Chapman relative to the indebtedness of the corporations to other creditors could be met. That there was never any proposition or agreement that, if the bank would transfer all of the debts and assets and release appellant and the corporations, he would pay $50,000 in cash. That there was never a suggestion that he was to be released from the obligations. That no such proposition was ever discussed at any time between him and the bank. That he did not obtain the $40,000 from Mr. Chapman. That he never advised the bank that he was obtaining the money. That Chapman was not offering the money to him, but offered it to the bank for the purchase of the notes, securities, etc. That the offer came voluntarily from Mr. Chapman, and he communicated the proposition to the bank, which it accepted. That he did not agree with the bank, or its officers, that he would execute his two notes for $5,000 each, and pay $40,000 to be advanced by Chapman, in full settlement of the indebtedness. That there was never a suggestion that he would be purchaser, but all of the obligations including his individual indorsement were sold and transferred in full to Mr. Chapman, and he did not receive one cent therefor. That, some days after Mr. Chapman's offer had been accepted, the first negotiations with reference to the two notes sued on were had, between him and the bank. That, inasmuch as he had been the managing officer of the two corporations, he had indicated his personal regrets that the bank had incurred a loss on the property, and suggested that, at some future time, provided he remained in charge of the business of the corporations, and could get them back to where they could spare $10,000 out of the business, he would endeavor to see that they got the additional $10,000. That something like two days after this suggestion, in another conference relative to a compliance with the conditions of Mr. Chapman's offer, the bank suggested that notes be given by him for the $10,000, as the notes would be of assistance to the bank. That he agreed to do this, provided the notes contained the stipulation that the debts of the companies should be satisfied, the companies put back on their feet, and they were able financially to take out of the business $10,000 without disturbing them as going concerns, and his corporations were to have the assistance of the bank in securing money and credit. The bank officials explained that, if these conditions were put in the face of the notes, they would be of no use to the bank, and suggested that the conditions should be placed in a letter, attached to the notes, instead of in the notes. The bank officials later advised him that, if the conditions were written in a letter and it attached to the notes, it would prevent them from using the notes for credit, with the banking department; and, if it was not in writing, there would be no questions asked, but, if placed in the notes, there would be; that no credit was given on the indebtedness of the seed farm by reason of the two notes; that he received no money by reason of said notes, and got no credit on the books of the bank by reason thereof; that the obligation was put in the form of a note for the accommodation of the bank.

The appellant offered in evidence a proposition made to him by the bank, apparently written in September, 1921, stating:

"If on or before thirty days from this date, you will pay us in cash the sum of $30,000. and if, within three weeks after the payment of said sum of $30,000, you will pay us, in cash, the. sum of $10,000, an aggregate of $40,000, or its acceptable equivalent, we will, as soon as such aggregate amount is paid over to us, transfer, assign, sell, and convey to you, · by proper instruments of writing, all right, title, and interest which the said bank may or might have in any and all notes, acceptances, deeds of trust, and mortgages, including the overdraft due said bank by said Ferguson Seed Farm, without recourse upon the bank."

Plangman testified, in substance, that he participated in the negotiations between the bank and the defendant relative to the indebtedness of the two corporations, and that he never heard of any proposition to pay $50,000 in cash, but was present when the $40,000 cash was agreed upon; that, at the time the bank agreed to accept the $40,000, the notes sued upon were not discussed; that it was some time after the bank had agreed to accept the $40,000 in cash and transfer its claims to Mr. Chapman before the notes sued upon were given.

Neither the notes, acceptances, deeds of trust, or mortgages held by the bank appear in the record, nor does the transfer from the bank of such instruments to Chapman appear in the record, but appellant testified without contradiction that the consideration recited in said transfer was $40,000 cash.

The bank proposed in writing in September, 1921, before said transfer was made October 5th thereafter, to accept $40,000 for the indebtedness of the seed farm. The appellees explained that this proposition was limited to the indebtedness of the seed farm, and did not include the indebtedness of the Scott & McKown Gin Company. However, in their reply to appellant's answer, they made no

mention of the indebtedness of the gin company, but pleaded that the seed farm was indebted to the bank in excess of $100,000, which the record shows included the debts of both corporations. If appellant's testimony is true, the transfer to Chapman included his personal liability, and was for $40,000 in cash. The note sued on had no connection with the transaction by which the notes, acceptances, and securities were transferred by the bank to·Chapman, as the notes were never mentioned or discussed until after the bank had accepted the. proposition of Chapman to pay $40,000 in cash for the indebtedness, securities, etc. Appellant was not relieved of his personal liability on the obligation and neither he nor the corporations received any credit, money, or other thing of value by reason of the transfer. The obligations transferred were not credited with any payment, but as transferred, in the hands of Chapman, were enforceable for the entire amount at his pleasure. The record does not show any agreement to extend the time of the payment of the obligations, or any part thereof, and while some time elapsed before the notes and securities were sold and transferred by Chapman to appellant's sister, and by her foreclosed under this record, the delay arose from forbearance instead of any agreement for an extension of time.

[1] Want of consideration is a defense to a note, still in the possession of the original payee, as were the notes in controversy. ·Article 574, R. C. S. 1925. A promissory note unsupported by any consideration is not enforceable by the payee. Irwin v. State National Bank (Tex. Civ. App.) 224 S. W. 246; Santikos v. Hamilton Turner Gro. Co. (Tex. Civ. App.) 208 S. W. 560; Bonzer et al. v. Garrett (Tex. Civ. App.) 162 S. W. 934; King v. Wise (Tex. Com. App.) 282 S. W. 570; Central Bank & Trust Co. v. Ford (Tex. Civ. App.) 152 S. W. 700; Catterlin v. Lusk et al., 98 Mo. App. 182, 71 S. W. 1109; Conwell v. Rice, 202 Ala. 324, 80 So. 406; Currier v. Clark, 15 Colo. App. 6, 60 P. 958; Oldacre v. Stuart, 122 Ala. 405, 25 So. 38.

[2] The appellant having pleaded want of consideration as a defense, and the testimony, though sharply controverted, being sufficient in our opinion to raise such issue, the court, in refusing appellant's request to submit such issue, committed reversible error. Articles 2189, 2190, R. C. S. 1925; Fox et al. v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Railway Co. v. Wilson (Tex. Com. App.) 279 S. W. 808; Gardenhire v. Gardenhire (Tex. Civ. App.) 172 S. W. 726.

[3] The appellant assigns as error the action of the trial court in admitting over his objections, the testimony relative to the final sale of the assets of the seed farm and the Scott & .McKown Gin Company under the liens transferred by the bank to Chapman, and by him to appellant's sister, and the reorganization of the companies. He urged ·as a defense to the notes an understanding between himself and the bank that said.notes were to be paid out of the earnings of said corporations, provided said earnings were sufficient over and above other demands for the payment of said notes. The testimony was admissible on this issue. The exclusion of the testimony of appellant on the issue of failure of consideration as distinguished from the defense of want of consideration, under the pleadings, did not constitute reversible error.

[4] It is unnecessary to discuss the assignment pertaining to the language used by counsel in his argument to the jury, as, in all probability, it will not occur on another trial. Counsel, in argument to the jury, should refrain from stating, as evidence, any fact not revealed by the record.

The judgment is reversed, and the cause remanded.